IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CAUSE NO. 1:19-CR-254-LY |
| | § | |
| DAVID EVAN SCHANZLE | § | |

## MEMORANDUM OPINON AND ORDER ON DEFENDANT'S MOTIONS TO DISMISS

Before the court in the above-styled and numbered cause are two motions to dismiss by Defendant David Evan Schanzle and the related responses and replies.

The first is Schanzle's Motion to Dismiss Counts One, Two, Three, and Four of the Superseding Indictment filed September 3, 2020 (Doc. #105) and the United States of America's (the "Government") response filed October 2, 2020 (Doc. #110).

The second is Schanzle's Motion to Dismiss Counts One, Two, Three, Four, Five, Six, Seven, Eight, and Nine of the Superseding Indictment filed October 27, 2020 (Doc. #117), the Government's response filed November 18, 2020 (Doc. #120), and Schanzle's reply filed November 27, 2020 (Doc. #121). On December 4, 2020, the court held a hearing on the motions.

Having reviewed the parties' pleadings, exhibits, and the governing caselaw, the court now renders the following memorandum opinion and order.

### BACKGROUND

In 2007, the State of Texas (the "State") revoked the sales-tax permit for Schanzle's for-profit retail business, Gardens of the Ancients ("GOTA"). Schanzle then called the Texas comptroller's office and falsely stated that he had closed GOTA. By September 2008, Schanzle had established Flower of Life Healing Ministries ("FLHM") as a church or religious ministry. From then on, Schanzle represented to the State that GOTA was a "gift shop" for FLHM and that

the money customers paid for products constituted "donations" to FLHM. Schanzle paid his workers in cash and instructed them to refer to themselves as volunteers. Schanzle did not pay or collect sales tax on the products he sold and did not pay income tax from 2013 to 2017.

The crux of the charges against Schanzle is that he devised and intended to devise "a scheme and artifice to defraud the State of Texas out of revenue in the form of sales tax, for the purpose of executing that scheme and artifice, the Defendant caused certain information to be mailed and to be transmitted electronically in interstate and foreign commerce." On October 15, 2019, a grand jury indicted Schanzle on one count of mail fraud and three counts of wire fraud. On November 19, 2019, a superseding indictment charged Schanzle with five additional counts of federal-income-tax evasion.

Count One alleges that Schanzle used the mail to execute a scheme and artifice to defraud the State by sending a letter to the Texas Department of Agriculture (the "Department"), stating, "We do not sell plants commercially and publically or wholesale, all donations/transactions are private and we are not a public retail operation." Counts Two through Four allege that Schanzle used electronic communications to defraud the State. Specifically, Count Two relies on Schanzle's statement in an email: "We are officially a church's gift shop. We are sales tax exempt." Count Three cites a wire deposit from a credit-card company of approximately $2,000 into an account at Independent Bank held in Schanzle's name. Count Four is based on GOTA's website describing the business as the "Gift Shop for the Flower of Life Healing Ministries" and stating that the business is "dedicated to supporting" FLHM. Counts Five through Nine allege that Schanzle willfully attempted to evade and defeat income tax due to the United States from January 1, 2013, through December 31, 2018. Count Five accounts for income tax year 2013, Count Six for 2014, Count Seven for 2015, Count Eight for 2016, and Count Nine for 2017.

### ANALYSIS

The court will address Schanzle's motion to dismiss Counts One through Four for failure to state a claim before turning its attention to his motion to dismiss Counts One through Nine for alleged prosecutorial misconduct.

## I.    Schanzle's Motion to Dismiss Counts One Through Four

In his motion to dismiss Counts One through Four, Schanzle argues that the Government padded a pedestrian tax case with insufficiently pled mail- and wire-fraud counts. Schanzle seeks dismissal for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B). When considering such a motion, the court is "required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Kay,* 359 F.3d 738, 742 (5th Cir. 2004).

The Federal Rules of Criminal Procedure only require the indictment to "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A constitutionally sufficient indictment fairly informs the defendant of the charge he faces and is precise enough to preclude the risk that the defendant may be prosecuted for the same offense in the future. *United States v. Caldwell*, 302 F.3d 399, 410 (5th Cir. 2002). Further, "the test of the validity of an indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.*

The indictment alleges that Schanzle devised and intended to devise a scheme and artifice to defraud the State out of revenue in the form of sales tax. It further alleges that the purpose of the scheme was to obtain "money and property by means of materially false and fraudulent purposes, representations and promises." Counts One through Four allege that Schanzle caused a mailing or an electronic communication "for the purpose of executing" his scheme "with intent to defraud." The Government specifies the scheme to defraud by identifying the victim (the State),

3

the property that the scheme was designed to take from the victim (sales tax), a definite period (from 2007 until November 19, 2019), and a number of specific acts and practices by which Schanzle allegedly carried out the scheme.

As explained below, each of the four counts specifically identifies the single mailing and three electronic transmissions that constitute the offenses. Counts One through Four state the elements of mail and wire fraud, notify Schanzle of the charges against him, and enable Schanzle to assert the defense of double jeopardy in the event of a future prosecution. Therefore, the court concludes that the indictment satisfies minimal constitutional standards.

### A. Count One

Count One of the indictment stems from Schanzle's February 3, 2016 *pro se* cease-and-desist letter to the Department. In the letter, Schanzle demands that agents of the Department stop trespassing on his land and writes, "We do not sell plants commercially and publically [sic] or wholesale, all donations/transactions are private and we are not a public retail operation." The Government offers this letter as evidence of a communication designed to prevent the disruption or detection of an ongoing fraudulent scheme in which Schanzle claims his business is a tax-exempt religious organization when in fact the business is a commercial, for-profit business. The Government argues that Schanzle misrepresented material facts to the State to defraud the State out of revenue in the form of sales tax and thereby enrich himself. Schanzle contends that Count One fails to state a mail-fraud offense because the single mailing pleaded is protected First Amendment speech, the statements in the letter cannot constitute actionable fraud, and the Government fails to plead materiality and nexus.

### 1. Protected First Amendment Speech

Schanzle argues that the cease-and-desist letter is protected speech under the First Amendment's petition clause and the *Noerr-Pennington* doctrine. The First Amendment's petition clause recognizes an individual's right to petition the government for redress without fear of retribution. U.S. CONST. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). However, "fraud has long been recognized to be outside the protection of the First Amendment." *United States v. Brooks*, 681 F.3d 678, 696 n. 13 (5th Cir. 2012); *see United States v. Stevens*, 599 U.S. 460, 468 (2010) ("From 1791 to the present . . . the First Amendment has permitted restrictions [including fraud] upon the content of speech."). If the Government is correct that Schanzle's letter fraudulently states that GOTA is not a public retail operation, the First Amendment does not protect this speech. That decision must await trial.

Under the *Noerr-Pennington* doctrine, a party who petitions the government for governmental action favorable to it cannot be prosecuted under the antitrust laws even though the party's petition is motivated by anticompetitive intent. *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'n, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988) (citing *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)). The doctrine applies to state-law claims and pre-litigation conduct such as cease-and-desist letters. *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367–68 (5th Cir. 1983). However, the doctrine does not apply to criminal-fraud cases. First, "neither the *Noerr-Pennington* doctrine nor the First Amendment more generally protects petitions predicated on fraud or deliberate misrepresentation." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009). "Where statements are deliberately false or misleading, *Noerr-Pennington* does not

apply." *Id.* at 1124. Second, the doctrine applies only to actions designed to influence policy. *Woods Expl. & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1298 (5th Cir. 1971) (finding doctrine inapplicable to filing of false nominations by defendants because conduct was not action designed to influence policy, which is all *Noerr-Pennington* rule seeks to protect).

The indictment alleges that Schanzle's representations to the Department were fraudulent misrepresentations and were not designed to influence policy. For purposes of Schanzle's motions, taking as true the Government's allegations that Schanzle's representations to the Department were fraudulent misrepresentations and were not designed to influence policy, the *Noerr-Pennington* doctrine does not apply. Therefore, the court concludes that the First Amendment does not immunize Schanzle from criminal liability for the false statements alleged in Count One.

### 2. Actionable Fraud

Schanzle also argues that the statements in his letter cannot establish criminal-fraud charges because disagreements, misstatements, and even misrepresentations of law cannot constitute actionable fraud. The Government contends the statements are statements of fact, since Schanzle does not cite legal authority and uses terms that are common in non-legal usage. Although Schanzle's contention—that GOTA is not subject to sales tax as part of the FLHM ministry—could be deemed a legal opinion or disagreement, the statements at issue are factual in nature. Count One is based on Schanzle's statements that (1) GOTA does not sell plants commercially and publicly or wholesale, (2) all donations and transactions are private, and (3) GOTA is not a public retail operation. None of these representations are legal opinions; they are all statements of fact. Therefore, the court concludes that these representations can constitute criminal fraud.

### 3. Materiality and Nexus

Schanzle also argues that Count One fails to state an offense because the Government fails to plead two elements of the offense charged—materiality and nexus.  To sufficiently charge the offense of mail fraud, the indictment must allege that (1) the defendant devised or intended to devise a scheme to defraud, (2) the mails were used for the purpose of executing or attempting to execute the scheme, and (3) the falsehoods employed in the scheme were material.  *Caldwell*, 302 F.3d at 409.  Therefore, the Government must establish the required nexus between the defendant's fraudulent scheme and his use of the mails in furtherance of that scheme.  *United States v. Evans*, 148 F.3d 477, 483 (5th Cir. 1998).

Schanzle argues that the Government does not plead how a cease-and-desist letter is material to the alleged sales-tax fraud scheme.  Representations of fact are material if they are "important to" and have "the tendency to affect the decision-makers to whom they are directed." *United States v. Valencia*, 600 F.3d 389, 431 (5th Cir. 2010).  A rational jury could find that Schanzle's misrepresentations were important to and had a tendency to affect the State.  By purporting to be a tax-exempt religious organization, Schanzle directly affected the State's collection of sales tax.  Further, materiality need not be specifically charged "if the facts alleged in the indictment warrant an inference of materiality." *Caldwell*, 302 F.3d at 309.  The facts alleged in this indictment warrant an inference of materiality because Schanzle's letter communicated the central misrepresentation of his alleged scheme—that GOTA is a tax-exempt religious organization rather than a business.

The indictment also pleads the nexus element because Count One alleges that Schanzle used the mails to communicate the falsehood at the heart of the scheme to the victim of the fraud— the State.  "[T]he use of the mails need not be an essential element of the scheme." *Schmuck v.*

*United States*, 489 U.S. 705, 710 (1989).  "It is sufficient for the mailing to be incident to an essential part of the scheme, or a step in [the] plot."  *Id.* at 710–11.  Because the indictment alleges that Schanzle's letter conveys the key misrepresentation of the scheme to the scheme's victim, the communication is at least incident to an essential part of that scheme.

Further, the mail-fraud statute prohibits communications designed to prevent the disruption or detection of an ongoing fraudulent scheme.  18 U.S.C. § 1341; *Schmuck,* 489 U.S. at 705. Schanzle's letter instructs the Department to stop trespassing on his property.  A reasonable jury could conclude that Schanzle did not want state officials on his property, due to the risk that the State could uncover Schanzle's sales-tax scheme, and that the letter and the representations within it—that Schanzle was not operating a for-profit business—would diminish the likelihood of detection and disruption of the scheme.

### B.  Counts Two through Four

Schanzle also attacks the sufficiency of the indictment's pleading of Counts Two through Four, arguing the Government fails to state a cognizable offense in each wire-fraud count.  The statutory elements of wire fraud are (1) the defendant knowingly participated in a scheme to defraud; (2) interstate wire communications were used to further the scheme; and (3) the defendant intended that some harm result from the fraud.  *United States v. Powers*, 168 F.3d 741, 747 (5th Cir. 1999).  As with mail fraud, materiality of the falsehood is an element of wire fraud.  *Neder v. United States*, 527 U.S. 1, 25 (1999).

### 1. Materiality and Nexus

Count Two of the indictment relies on Schanzle's email to a supplier stating, "We are officially a church's gift shop.  We are sales tax exempt."  Count Three charges wire fraud based on a deposit from Company 2 of approximately $2,000 into the Independent Bank account held in

the name of David Schanzle d/b/a Gardens of the Ancients.  Count Four charges Schanzle with

wire fraud for the transmission of the GOTA website that describes the business as the "Gift Shop

for the Flower of Life Healing Ministries" and states that the business is "dedicated to supporting

the Flower of Life Healing Ministries."  For each of these counts, Schanzle argues that the

Government fails to plead the materiality and nexus elements required for wire-fraud charges.

Schanzle contends that Count Two is deficient because the email at issue is not material

and does not further the alleged scheme.  Because the email discusses an order that was completed

days before, Schanzle argues that the email could not have influenced the supplier not to charge

sales tax; therefore, the email did not affect the State's property rights.  The Government agrees

that the email has nothing to do with preventing the supplier from collecting sales tax on its sales

to GOTA.  Instead, the Government alleges that Schanzle represented GOTA as a tax-exempt

religious organization to avoid detection or disruption of his scheme.

To satisfy the nexus requirement, representations may violate the mail- and wire-fraud

statutes even though they (a) were not directed to the victim of the fraud; (b) did not convey any

information that was false or fraudulent; (c) were not essential to the fraudulent scheme; and (d)

were only incidental to an essential element of the scheme.  *See Schmuck,* 489 U.S. at 705.  "The

only question . . . is whether the allegations in the indictment were sufficient to permit a jury to

find that the mails [or wires] were used 'for the purpose of executing' the fraudulent scheme."

*United States v. Sampson,* 371 U.S. 75, 76 (1962).  Mailings and electronic transmissions violate

the statutes if they are designed to prevent the disruption or detection of an ongoing scheme.

*Schmuck,* 489 U.S. at 705.  Schanzle made the representation in response to the supplier asking for

Schanzle's business-license number.  The indictment alleges that GOTA did not have such a

number.  Since the supplier's question related to sales tax and operating a commercial business

without a license, Schanzle responded with the misrepresentation at the heart of his scheme—that GOTA is a religious organization exempt from sales tax. Therefore, Count Two alleges that Schanzle conveyed a false description of his business to a member of the public who was aware that GOTA should not operate without a license.

Further, the misrepresentation does not have to be made directly to the scheme's victim to be material. *United States v. McMillan*, 600 F.3d 434, 449 (5th Cir. 2010). The fact that Schanzle was communicating with a supplier rather than the victim of the scheme—the State—is irrelevant. "The issue is whether the victims' property rights were affected by the misrepresentation." *Id.* Representations of fact are material if they are "important to" and have "the tendency to affect the decision-makers to whom they are directed." *Valencia*, 600 F.3d at 431. A rational jury could find that Schanzle made the representation to maintain a working relationship with the supplier and to discourage the supplier from reporting Schanzle's practices to the authorities. Without suppliers, Schanzle would not be able to run his business—selling products without collecting sales tax. Therefore, this misrepresentation affected the property rights of the State by depriving the State of tax revenue. Since Count Two alleges that Schanzle made a misrepresentation that affected the decisionmaker—the supplier—to whom it was directed by helping to avoid detection of Schanzle's scheme and that affected the victim's—the State—property rights, the Government sufficiently pleads the materiality and nexus elements.

Count Three also properly states the offense of wire fraud because the count alleges an electronic transmission that directly furthered the purpose of the alleged scheme. The indictment alleges that Schanzle used Company 2 to process credit-card payments. The indictment also alleges that GOTA was a retailer selling taxable items, but did not have a sales-tax permit or remit sales tax to the State. The deposit to GOTA's bank account alleged in Count Three consisted of

GOTA's sales proceeds, for which Schanzle did not pay sales tax. A rational jury could find that the deposit was "for the purpose of executing the scheme" because the alleged objective of the scheme was to unlawfully enrich Schanzle by avoiding paying sales tax he knew he owed to the State. Therefore, the Government sufficiently pleads the nexus element. The indictment also satisfies the materiality element because the deposit affected the property rights of the State by depriving it of revenue.

Lastly, Count Four sufficiently pleads the materiality and nexus elements because the count alleges that Schanzle used the Internet and GOTA's website to convey a false description of the business to any member of the public who might have an interest in GOTA. A rational jury could find that Schanzle used the website to widely disseminate the misrepresentation that GOTA was a tax-exempt religious organization rather than a retail business. Further, a rational jury could find that Schanzle made the misrepresentations for the purpose of influencing GOTA's customers and workers, thereby perpetuating his fraudulent scheme. For instance, the representations tended to affect whether customers and workers would do business with GOTA or report Schanzle to the authorities. Further, the misrepresentations to GOTA workers could affect them by persuading them it was legal to complete sales at GOTA without collecting sales tax. The court concludes that the Government's allegations in the indictment satisfy minimum constitutional standards.

Although Schanzle argues that the indictment insufficiently pleads the materiality and nexus elements for the mail- and wire-fraud charges, "[t]he only question . . . is whether the allegations in the indictment were sufficient to permit a jury to find that the mails [or wires] were used 'for the purpose of executing' the fraudulent scheme." *Sampson*, 371 U.S. at 76. A rational jury could find that Schanzle understood the perpetuation of his ongoing scheme depended in part on the mailing in Count One and the electronic transmissions in Counts Two and Four. Further,

Count Three properly states the offense of wire fraud because it alleges an electronic transmission that directly furthered the purpose of the alleged scheme—to enrich Schanzle.

Ideally, the indictment would plead the materiality and nexus elements more clearly so the court would not have to rely on what a rational jury *could* conclude. However, the test of an indictment's validity is not whether it could have been framed more satisfactorily, but whether the indictment conforms to minimal constitutional standards. *Caldwell*, 302 F.3d at 410. To be sufficient, an indictment needs only to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke double jeopardy in any subsequent proceeding. *Id.* The court concludes that the indictment satisfies minimum constitutional standards.

### 2. "Innocent" Transmissions

Schanzle also argues that Counts Two and Four fail to state an offense because the email and website do not contain any fraudulent representations. He contends that the relevant statements are true or reflect Schanzle's belief about an undecided matter of law. The Supreme Court has held that "innocent" mailings—ones that contain no false information—may supply the mailing element. *Parr v. United States*, 363 U.S. 370, 390 (1960). Because the mail- and wire-fraud statues share the same language in relevant part, the same analysis applies to each. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6 (1987). Therefore, an "innocent" transmission may supply the wire element. Though the Government contends that Schanzle's representations are false, and the court takes the indictment's allegations as true for motion-to-dismiss purposes, the characterization is not relevant either way. The court concludes that the indictment's allegations that Schanzle made the relevant representations in his email and on GOTA's website satisfy minimal constitutional standards; the Government does not have to prove the statement's falsity.

## II.   Schanzle's Motion to Dismiss Counts One through Nine

The court now turns its attention to Schanzle's motion to dismiss Counts One through Nine. In this motion, Schanzle argues that "unconscionable Government misconduct" before the grand jury deprived him of his fundamental Fifth Amendment right to an indictment by a fair and impartial grand jury. Schanzle seeks dismissal of all counts for a defect in instituting the prosecution, specifically an error in the grand-jury proceeding. Fed. R. Crim. P. 12(b)(3)(A). The crux of Schanzle's argument is that the State does not tax food products, including herbs. Since Schanzle through GOTA sells mostly herbal food products, he argues that he did not actually owe the sales tax of which he is charged with fraudulently depriving the State. Schanzle also alleges Government misconduct during the grand-jury proceeding, claiming the prosecutors did not tell the grand jury about this controlling issue of law. In fact, Schanzle alleges the Government repeatedly lied about the law. However, the record does not reflect any evidence of prosecutorial misconduct. Further, GOTA sells products other than herbs that are subject to sales tax.

### A. Prosecutorial Misconduct

Schanzle argues that Government misconduct overbore the will of the grand jury, causing him prejudice. He alleges that the Government "broke" the grand jury, thereby violating Schanzle's Fifth Amendment right to an indictment by an independent grand jury. Specifically, Schanzle contends that the Government (1) misled and (2) misinformed the grand jury about the governing law, (3) a third Government official misled the grand jury about dispositive issues of law, (4) the Government told the grand jury that whether Schanzle actually owed sales tax was irrelevant, (5) the Government forbid the grand jury from considering clear controlling law or (6) personal knowledge of sales-tax exemptions. He argues the Government's "unconscionable misconduct" irreversibly tainted the integrity of the indictment.

Courts have the power to dismiss an indictment for prosecutorial misconduct that violates the Constitution or for other misconduct under their supervisory power. *United States v. Strouse*, 286 F.3d 767, 771–72 (5th Cir. 2002). A district court may use this power where misconduct before the grand jury amounts to a violation of one of those "few, clear rules" which were carefully drafted and approved by the Supreme Court and congress to ensure the integrity of the grand jury's functions. *See United States v. Williams*, 504 U.S. 36, 46 (1992). Prosecutors are accorded leeway in presenting their cases to the grand jury. *See, e.g., United States v. Adamo*, 742 F.2d 927, 936–38 (6th Cir. 1984). However, prosecutors are bound by those "few, clear rules," including prohibiting persons other than the jurors from being present while the grand jury deliberates or votes (Rule 6(d)) and placing strict controls on disclosure of matters occurring before the grand jury (Rule 6(e)). Fed. R. Crim. P. 6; *Williams*, 504 U.S. at 46 n. 6. Additional standards of behavior for prosecutors are set forth in Title 18 of the United States Code. 18 U.S.C. §§ 6002, 6003 (setting forth procedures for granting witness immunity from prosecution); 18 U.S.C. § 1623 ("Section 1623") (criminalizing false declarations before grand jury); 18 U.S.C. § 2515 (prohibiting grand-jury use of unlawfully intercepted wire or oral communications); 18 U.S.C. § 1622 (criminalizing subornation of perjury). Schanzle argues that the Government made several false representations to the grand jury, alleging violations of Section 1623.

Schanzle's central allegation is that the Government repeatedly told the grand jury that Schanzle deprived the State of a tax it does not collect, thereby violating Section 1623. However, the State imposes a sales tax on the sale of tangible property, defined as "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner." Tex. Tax Code §§ 151.010, 151.009. Schanzle argues that most of his sales consist of "food products for human consumption" and are thereby exempt. *See* Tex. Tax Code § 151.314(a).

However, it is unclear whether herbs qualify as food or food products or dietary supplements.  The Texas Tax Code exempts dietary supplements with certain characteristics.  *See* Tex. Tax Code § 151.313.  A product is non-taxable under this provision if it (1) contains one or more vitamins, minerals, herbs or botanicals, amino acids, or substances that supplement the daily dietary intake; (2) is not represented as food or the sole item of a meal or the diet; and (3) is labeled "dietary supplement" or "supplement", or (4) is labeled or required to be labeled with a "Supplemental Facts" panel in accordance with FDA regulations.  IRS Criminal Investigation Special Agent Jonathan Gebhart told the grand jury that Schanzle was selling the herbs in "random glass jars" that did not have lists of ingredients or labels.  Since herbs may be classified as food or dietary supplements but Schanzle's herbs do not have the required labels to qualify as dietary supplements, it is unclear whether GOTA's herbal products would be tax-exempt under Texas law.  Nevertheless, Schanzle sells other products that are taxable, including cannabidiol (CBD) products, crystals, clothing, jewelry, candles, soaps, and books.

Further, the charges against Schanzle do not require the Government to prove a violation of Texas tax law.  The Government need not prove that Schanzle violated the letter of state law; rather, the Government must prove that he engaged in a scheme to defraud. *See United States v. Moore*, 37 F.3d 169, 172 (5th Cir. 1994).  Therefore, the Government properly instructed the grand jury that the mail- and wire-fraud charges against Schanzle require "a scheme or artifice designed to deprive the victim of property," that sales taxes qualify as property, and that the Government does not have to prove that Schanzle "actually deprived the State of Texas of any property" if the tax-evasion scheme was *designed* for that purpose.  The Government is not required to prove an actual loss. *See McMillan*, 600 F.3d at 450.

Regardless of the tax-exempt status of the herbs sold at GOTA, there is no evidence of

prosecutorial misconduct. The tax classification of the herbs is complicated and unclear; there is

nothing in the record indicating that the Government deliberately made false representations to or

misled the grand jury. *See United States v. Stearman*, 981 F.2d 1256, 1992 WL 386839, at *3 (5th

Cir. 1992) (unpublished) (finding no prosecutorial misconduct when government witness had

factual basis for grand-jury testimony). In fact, the prosecutors repeatedly relied on a letter from

the Texas Comptroller of Public Accounts that advised Schanzle that the items he sold are subject

to Texas sales tax. Schanzle paid sales tax from 1999 to 2006; when he stopped doing so, the

comptroller, Texas's chief tax collector, accountant, revenue estimator and treasurer, instructed

Schanzle that he continued to owe sales tax. In the 2006 letter, the comptroller wrote Schanzle:

> According to your website, you own and operate an herb emporium and nursery
> whereby you sell medicinal and culinary herbs; tinctures; oils; specialty health
> products; handmade soaps; face creams; books; crystals; clothing; and unique
> jewelry. Clearly these qualify as tangible personal property the sale of which
> subjects you to Texas sales tax.

Therefore, the prosecutors directed the jurors to an expert opinion, trusting the State's chief tax

collector's assessment that Schanzle owed sales tax.

The Fifth Circuit has held that "absent perjury or government misconduct" an indictment

is not flawed "simply because it is based on testimony that may later prove to be questionable."

*United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978). In fact, even perjured grand-jury

testimony does not demand dismissal of the indictment under the district court's supervisory power

unless the perjury was "knowingly sponsored by the government." *Strouse*, 286 F.3d at 772.

Accordingly, analyzing a defendant's claim that the prosecution put false information before the

grand jury, the court asks: (1) did the government knowingly sponsor false information before the

grand jury and (2) was that information material—was the information capable of influencing the

grand jury's decision. *United States v. Cessa*, 861 F.3d 121, 142 (5th Cir. 2017). Since the

Government did not knowingly sponsor false information before the grand jury, Schanzle's allegation that the Government violated Section 1623 is not supported.

A court may dismiss an indictment pursuant to its supervisory powers based on alleged misconduct before the grand jury only in extraordinary circumstances. *United States v. Welborn*, 849 F.2d 980, 985 (5th Cir. 1988). A court may dismiss an indictment for an alleged violation of the Fifth Amendment's Due Process Clause only if the grand-jury proceeding was fundamentally unfair. Under both standards, courts may dismiss an indictment when prosecutorial misconduct "amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury." *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982). Thus, "Government misconduct does not mandate dismissal of an indictment unless it is so outrageous that it violates the principle of fundamental fairness under the Due Process Clause; such violations are found only in the rarest circumstances." *United States v. Forte*, 2003 WL 1922910, at *6 (5th Cir. Mar. 24, 2003) (per curiam). "Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989).

No extraordinary circumstances or fundamental defects are present here. The transcript of the grand-jury proceedings demonstrates that there was no prosecutorial misconduct and that the grand jury acted according to its role. The grand jury serves the function of standing between the accuser and the accused to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will. *Wood v. Georgia*, 370 U.S. 375, 390 (1962). In this case, grand jurors repeatedly questioned the prosecutors and witnesses, challenging them with their own personal experiences and research. The indictment was that of "an active,

independent, and questioning grand jury," not "that of the prosecutor." *See McKenzie*, 678 F.2d at 631–32.

Schanzle's allegations against the Government are really attacks on the sufficiency of the evidence for the indictment. "A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete" or 'misleading.'" *Williams*, 504 U.S. at 54. In response to similar complaints, the Supreme Court has repeatedly held that reviewing facially-valid indictments on such grounds "would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it." *Id.*

An indictment may be dismissed if a defendant establishes both error before the grand jury and prejudice. Fed. R. Crim. P. 12(b)(3). Since Schanzle has not proved error, the matter of prejudice is irrelevant. His arguments do not meet the high standards for dismissal and are best reserved for his defense at trial.

## CONCLUSION

Because the indictment conforms to minimum constitutional standards and there is no evidence of prosecutorial misconduct, the court will deny the motions to dismiss. Accordingly,

**IT IS ORDERED** that Schanzle's motion to dismiss Counts One through Four (Doc. #105) is **DENIED**.

**IT IS FURTHER ORDERED** that Schanzle's motion to dismiss Counts One through Nine (Doc. #117) is **DENIED**.

SIGNED on this **21st** day of April, 2021.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE